Steenholt. May it please the court. My name is Rachel Steenholt and I represent Mr. Keys in this matter. We request this court vacate and remand this case for a new trial or in the alternative vacate and remand this case for resentencing. Three victims testified during trial and district court errors affected each testimony. Because this case hinged exclusively on witness credibility, the cumulative effect of these errors warrant a new trial. The first error I want to discuss is the district court permitted H.L.'s Rule 413 testimony. As discussed in the briefs, the district court failed to meaningfully engage in the Rule 403 balancing test. We saw this in a couple of ways. At a pre-trial conference, the judge almost wrapped up the proceedings before being reminded to rule on this issue and then second at trial. On ruling on this issue, the court acknowledged that this testimony was quote suicide for the defendant, but he was resigned to the fact that he couldn't really do anything about it under Rule 413. And this just demonstrates that the court can do something under Rule 403 and it failed to take its gatekeeping role seriously. But even if the district court did engage in this balancing test, a testimony wouldn't have been permitted. The reason being is because the probative value here was really low. We have a child who was touched on her butt in her front, those are her words, and possibly over clothing, she couldn't remember. This is markedly different from what happened with the other children who claimed sexual intercourse on multiple occasions. So here the evidence was marginally relevant and Rule 403 requires the exclusion of evidence that is needlessly cumulative. This specific testimony was likely to provoke an emotional response from the jury and when you stack needlessly cumulative information with minimal probative value on top of one another, it has the effect of being ultimately unfairly prejudicial to Mr. Keyes. For these reasons, the district court abuses discretion in permitting the Rule 413 testimony. The second error I will discuss is the district court limited Dion Taylor's testimony, which affected Mr. Keyes' ability to defend himself. Keyes attempted to address two points through Taylor's testimony. The first was the vindictiveness of IC's parents to fabricate false claims of abuse. So despite years of abuse, IC makes these claims when Keyes is leaving. Keyes bought furniture for the house, he contributed to the rent and bought the children gifts, and he was leaving the house and that also meant that the financial contribution was ending. Taylor too had lived at the home and he had financially contributed to the homestead and he could speak to the vindictive nature of IC's parents once those financial benefits ceased. Specifically, he had received threatening text messages that he was, quote, going to pay for it in an ominous sort of threat. Was the objection relevancy? The court ruled on relevancy and said that this matter was an entirely collateral matter, but the standard for relevancy is really low. And so the standard is that... I just wondered what the basis of the objection and the ruling were. Yeah. Was there any basis other than relevance? No, the district court said that it was relevance. It was an entirely collateral matter. And, but the... That was for the second issue. The second issue dealt with more of a foundation issue, but this first one was relevance. And the standard for relevancy is really low. The evidence should be admitted if it has any tendency to make the fact of consequence more or less probable. And so, Mr. Keyes had also had a financial dispute with I.C.'s parents. I.C.'s mother felt that he, too, owed them money. And there was, she had testified that there was a heated exchange about that. There was also some evidence of vindictiveness on I.C.'s parents' part towards Keyes. While he was packing his things, his car keys mysteriously go missing. They ultimately find it on someone else's bed, but because the relevancy standard is so low and Taylor's... Can you tell me what the relevance was? The relevance is that Taylor's testimony, or Taylor's experience with I.C. On the ill will, if you will, between Yes. Landlord and tenant. Yeah, so the relevancy is that it shows I.C.'s parents' vindictiveness in their willing, their ability to fabricate potential claims of abuse. Did they testify? At trial, yes. Both parents testified. You're arguing that the parents didn't like these guys and therefore got the children to fabricate? That's your relevance claim? That's the relevance claim, yes. And is there any basis in the testimony for that? Well, Mr. The other evidence, I mean. There was... Well, that's the issue, is that Mr. Taylor was going to testify about his experience with I.C.'s parents when there was a financial dispute at issue and his testimony was limited. Did the offer of proof link it in any way to the sexual charges in the testimony of the children? I'm not talking now about the favoritism. That's your second point? That is, yes. You're talking now about this notion that Taylor thought they were nasty people and picked on Taylor and Keyes. How does that possibly relate? Sure. Was there an offer of proof that would link it to the children's testimony? Well, Taylor's testimony demonstrates general vindictiveness and there was that ominous threat that he was going to pay for it. So then with Keyes' testimony, what happened while they were undergoing their financial dispute, which is different from what happened during Taylor's financial dispute with the parents, is that during Keyes' financial dispute, I.C.'s parents were well aware that there was an abuse allegation that had already been made. So here they had, with Keyes' case, they had a specific opportunity to be vindictive, to bolster H.L.'s claim of abuse that they were already aware of. Now that wasn't present in Taylor's financial dispute with the parents, and so the argument is that this manifested. Not H.L. Now we're talking about I.C. We're talking about I.C., but my point in bringing up H.L. is that I.C.'s parents at the time that Keyes was leaving and they were having this financial dispute, that I.C.'s parents were aware of H.L.'s abuse allegations. So that could have informed their path of vindictiveness to fabricate false claims. Now there is a second issue. Was there any issue of the children being prompted or improperly coached in this case, as there are in many cases where there are intervening child support type people? That wasn't present in this case, the improper coaching or no. Yeah, no. So the second issue was the gifts that Your Honors have mentioned. So Keyes attempted to address through Taylor's testimony that Keyes was giving these gifts to I.C. It was really out of kindness. Taylor lived in the house. He observed I.C.'s family dynamics. He observed Keyes' interactions with both children, and he tried to opine on what he perceived was an innocent act turned nefarious under these accusations. Keyes had a right to provide a complete defense to the charges, and Taylor's testimony was crucial for its corroborative value. We saw that because Keyes was able to testify, and the jury clearly didn't believe him, and thus he was convicted. But had Taylor's testimony been able to provide some sort of corroborative element to Keyes' defense, then that would have been central for Keyes to provide his defense. The third error was the judge's admonishment to the third witness, J.B., to... Is there a foundation issue? I didn't know about that. I thought it was relevance. Relevance was for the first error, with Deon Taylor's testimony being limited when it came to... I thought it was both from the government's brief. What was the ruling on this favoritism? The favoritism, the district court denied it because he said that Taylor couldn't have known what Keyes' intentions were. And the response is that Taylor lived in the house. He observed the family dynamics. He observed Keyes' interactions with both children, and he should have been able to state that it didn't appear that it was due to a sexual... that these gifts were given in exchange for sexual purposes. The third issue, then, is that the judge's admonishment to the third witness to answer the questions to get off the stand. She was 11 years old. Both parties agree that she was nervous. I'm struggling here. Okay. Within a perfect world, what should Judge Plummer have said? You've got to end the Alice on the stand absolutely scared to death. You've got a whole packet of people in the courtroom that have very good skills to figure that out. Now, in the meantime, she is slow in responding to the questions, go to the fourth witness, fourth witness. Portman, as a judge, needs to assist this along somehow. And for the life of me, it seems to me he was doing a favor by saying answer the questions and you get out of here. Sure. I just can't see what's wrong with it. Sure. I guess it would be more the tone of Judge Kornman in handling an 11-year-old child who is clearly scared and hesitant. And, you know, the first couple of times he, hey, please will you answer the questions. And then finally it's this, you know, answer these questions so you can get off the stand. There's no please. It's just a little bit more terse. We can't review the tone. So what are you saying, Ralph, for the appellate court? I'm sorry? We can't. Tone doesn't show up on the transcript page. Right. If tone was the problem, you had to make a record of that. Yep. And in the briefing there's a couple examples in not just with. . . At the briefing, at the district court. Yeah. The counsel has to go up and, you know, request a sidebar and say, Your Honor, I think I understand what you're trying to do, but I think the tone is, you know, bad for one reason or another. If you don't make that record, the appellate court is helpless. Yeah. There was an offer of proof they had. There was a motion for mistrial following J.B.'s testimony on this issue. Was the tone question raised? I think it was. . . I think they're related because of how. . . No. No. That's Judge Magnuson's point. Okay. Well, you know, the judges don't have to. . . This is a cumulative error argument. So the judges don't have to find all three of these errors. There has to be something wrong with it. There has to be some hint of an error. Let's forget about .3. Well, there's two other errors that we've identified. No. We're trying to get your best. . . Take your best shot at .3. Mm-hmm. But you can't say tone because you didn't make a record. I say you. I don't know who tried the case. I'm not. . . Sure. I don't mean to personalize it. Sure. Yep. An appellate court is left with the cold transcript. What was the argument actually made on the motion for mistrial? Was there an argument in the motion that, in fact, that there was a direction by the judge? I don't have the transcript in front of me, so I don't know. I do have that excerpt over there, and so I can answer that question on rebuttal, which I would like to reserve the . . . So I will answer that question on rebuttal, and I'd like to reserve the remainder of my time for rebuttal. Mr. Morley? Good morning. May it please the court, counsel. My name is Troy Morley, and I'm an assistant United States attorney representing the United States in this appeal. The United States is asking this court to uphold the jury verdict in this case, finding the defendant guilty of aggravated sexual abuse of a child and abuse of sexual contact of a child. Why is it irrelevant what Taylor observes about the relation . . . what he has firsthand knowledge about when he observes that, from his perspective, Mr. Keys was more favored . . . treated, I see, more favorably than I see? I don't know that it gets anybody anywhere, but I can't see that it's . . . I can't see that it's not . . . it's based on firsthand knowledge, and why is it irrelevant to this . . . in this trial? Judge, I think that goes to the foundation issue, and if you look at . . . First, this information . . . What's the lack of foundation if it's testimony based on his personal observations and the inferences he draws from that? That's not a foundation problem. He . . . if you read what the trial counsel, and it was Mr. Albright, the trial counsel said, when he responded to that objection, he goes, he was going to show what Deshawn Keys' intent was when he was purchasing. Nobody knows what Deshawn Keys' intent was. That was . . . I don't know why it was phrased that way. So, that was the reason for the foundation. I could tell you I'm taking a drink of this water because I'm thirsty, or when it's really because I'm pausing,  And certainly, Mr. Taylor can say, I believe he was doing this because they favored one child over the other. Well, I see that up there. She testified. Was grooming part of the government's case at trial, or did that only come up at sentencing? It was part of the case. It was part of what was displayed, and it was part of . . . I would refer you to the docket, I believe it's 83, which was our notice for the 413 witness in this one. He's got a right to defend against the notion that he's showering favors on IC . . . Correct. . . . as a grooming. I'm sure that word wasn't used, but it's . . . Correct. . . . used on appeal a lot. So, that goes to . . . So, why isn't Taylor's personal observation at least potentially relevant to that? His personal observations came in. When it came to what the intent was, that's when the objection was. He doesn't know what the intent was. If I read his whole testimony, I'll see that the defense got that in there? I think it . . . and let me flip to this section of the brief, because I know I cited it in the brief, Judge. If you look at page 17 . . . So, you go to page 17 of the brief, and you see Mr. Alp . . . Did it appear that he favored him? Objection leading to irrelevance. That was sustained. You were present when Deshawn bought things. Yes. Did he treat IC good? Yes. What's your belief as to why he was treating? And then I objected to relevance and lacking foundation. That's what the court said. It was lacking foundation. So, Mr. Albright attempted to get into the foundation element, and this gets into the intent element. But, if you look, there's also . . . But, you know, people testify about intent of other people all the time, because it's an inference that can be drawn. You know, the fact of the matter is, we instruct juries that say that you may infer that a person intends the reasonable consequences of the act performed, right? And so, I mean, I'm really having a hard time with this whole evidentiary analysis here, that you say lack of foundation. What kind of foundation? They say, if I see you take a drink of water, it's a reasonable inference, right? And, you know, you still have the right to cross-examine it. And you can say, well, isn't it just a reasonable inference as well, that I want to stall so I can think about this for a while? Yeah, absolutely. But, this is a trial, you know? And it just seems to me that what's happening here is that these are very terse explanations. And I understand it's an abuse of discretion standard, but nobody's really explaining what the problem is, you know? And, in fact, even the objection, lack of foundation, well, that's not it. The objection is it's speculative, right? Because he's going to speculate. Now the question is, is it unreasonable speculation? But the record we have is foundation. I'm going, what foundation do you need to have that someone intends the natural consequences of his actions? We don't know what the natural consequences of his actions were. In this case, it was to keep I.C. quiet about the sexual abuse he was perpetrating on her. And I would also add, Judge Erickson, that the defendant in this case testified. The defendant in this case got to say why he was purchasing. He got to put forth that theory to the jury. And isn't it a little different, though, if someone else substantiates that theory? I mean, what defendants say may be deemed as being perfectly self-serving. What a neutral witness observes and testifies might be very probative. Again, if we can substantiate that this is his observations. And this information did get in front of the jury. I mean, he did get to give his opinions, except for when it came to the point, why was Deshaun buying these things? He doesn't know why Deshaun was buying these things. He doesn't, he can say, and he said he saw him treat her better. He saw him buy these objects. He saw the different treatment between the two sisters. He said all that. He testified to all that. What he wasn't allowed to say is what Deshaun's intention was when he bought these things. Because he doesn't know that. He doesn't know what's in someone's mind. He doesn't know what's in someone's heart. He got everything else in. And, again, the defendant testified in that regard. So there is no prejudice to the defendant by not allowing Dion Taylor to say what his speculation, you're correct, I probably should have objected to speculation in that one, Judge Erickson. But there's no prejudice. Deshaun himself actually testified. Deshaun himself actually said what the reason was. Pardon? I don't understand why you objected to it. All you did was make for a lot of problems on appeal with that objection. In the heat of the trial, Your Honor, I've got one person sitting up there trying to say why Deshaun was buying these gifts, and the defendant hadn't testified yet. If the defendant himself wants to put that information, maybe this is a timing issue. If the defendant had actually testified, and this was observations of what Dion Taylor had observed. It wasn't excluded as premature. No, it wasn't, Judge. I would agree with that. So the question was why I objected. So in my mind, it would probably be a premature thing. If Deshaun had already testified, had already put this information in front of the jury, I imagine my response and whether or not I objected would be a lot different. But at this point, the defendant hadn't testified at all. So the defendant was actually the last witness to testify in this case. So it was almost vouching ahead of the fact for the defendant at that point, which was not an objection I made. It's just me thinking out loud to the court's responses. So again, with the record in front, the information that they are complaining that does not get to the jury as far as Dion Taylor's testimony does in fact make it in front of the jury when Deshaun himself testifies. I don't know if the court has any questions for me about the first issue as to the whole rent dispute that got talked about and the money stuff. Again, I would just respond to the court that this wasn't a trial. The mother and her boyfriend were not on trial in this case over being mean to Dion Taylor. Whether or not they had disputes with money, this was a case about the sexual abuse of two young girls and the attempted sexual abuse of the 413 witness, all who testified into this. As the trial counsel, I don't want to go outside the record. Definitely Judge Magnuson, but there really wasn't a tone problem. You can't see that in the cold record. I wish Mr. Albright was actually here arguing so he could confirm that. But this was just a district court trying to get a very scared young lady to respond to questioning. Even after that admonishment where if she answers the question, she's able to get off the stand. There were still difficulties in getting her to talk. The record really doesn't show. It says pause. I would say painful pause would be probably a more accurate description. We ultimately ended up having to have her use the anatomical diagrams, the unmarked anatomical diagrams which were part of the exhibit lists to have her identify some of these. We couldn't elicit that testimony out of her. The record does reflect me attempting to get her to talk about the anatomical diagrams. I think Judge Corman pipes in, well, it doesn't matter what she calls it. She's identified it. I sort of ended my examination of that witness at that point. If the court does not have any other questions for me, I would ask that the convictions be affirmed. Thank you. I'll start off with the transcript. The transcript portion is on page 212. That's where the objection was made about the JV's testimony. Mr. Albright stated that he objected because he, quote, felt it was improper and that I wanted to make a motion for mistrial because it's encouraging a witness by telling her to answer the questions and get off the witness stand. So to me, the encouraging language implied a tone when I read the transcript and that's the direction we went in the briefs. And that's what the record states in preserving his motion. Now, this is a cumulative error argument. And so if the court doesn't have to find all three errors, there were three victims that testified and we addressed errors with each one. Had the Rule 413 evidence been properly excluded, then the jury wouldn't have heard from one witness in its entirety. Had the court allowed Keyes to present a complete defense to the main victim, then the jury may have reached a different conclusion. And had the trial court not prodded that third witness to answer questions so she could get off the stand, the jury may have heard different testimony. So with all three errors hinging on victim testimony, and the case was exclusively witness credibility here, there was no physical evidence, the prejudicial impact of these errors in tandem was substantial. Thus, this court should vacate Keyes' sentence and remand for a new trial, or in the alternative, this court should vacate and remand this case for resentencing. Thank you. Thank you, Counsel. The case has been well briefed and well argued. We'll take it under advisement and the court will be in recess for about 10 minutes.